AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

AUG 0 2 2021

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Telephone Number 505-686-3778, whose wireless service provider is Cellular One of North East Arizona

Case No. 21-mr-1089

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See attachment A, which is attached to and incorporated in the Application and Affidavit

located in the _____ District of ___New Mexico___, there is now concealed *(identify the person or describe the property to be seized)*:
See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 §1153, §113(a)(3) | Assault with a dangerous weapon committed in Indian country |

The application is based on these facts:
see attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Travis Kosir, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 2, 2021

*Judge's signature*

City and state: Farmington, NM

B. Paul Briones, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF Telephone Number 505-686-3778, whose wireless service provider is Cellular One of North East Arizona | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Travis Kosir, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain wireless telephone:

   a. call number **505-686-3778**, (referred to herein as "SUBJECT PHONE"), that is stored at premises controlled by CELLULAR ONE OF NORTH EAST ARIZONA (referred to herein as "Cellular One"), a wireless telephone service provider headquartered at 1500 South White Mountain Rd. Suite 103, Show Low, Arizona 85901.

2. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Cellular One to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3. I am a Special Agent of the Federal Bureau of Investigation ("FBI"), where I have been employed in that capacity since March 2016. I am currently assigned to the Albuquerque

Division of the FBI, Farmington Resident Agency, and have primary investigative responsibility for crimes that occur in Indian Country, including violent crimes such as homicide, robbery, arson, aggravated assault, and sexual assault. I have experience executing and examining data from multiple search warrants on electronic devices and am familiar with the type of data. I have training and experience conducting investigations involving the use of electronic devices, websites, social media, and other forms of electronic communication, including the identification and use of IP addresses in determining user identities, geographic locations, and linked accounts.

4. The information set forth in this affidavit has been derived from an investigation conducted by the Farmington Resident Agency of the FBI, the Navajo Nation Department of Criminal Investigations ("NNDCI"), and the Navajo Police Department ("NPD").

5. This affidavit is intended to show there is probable cause for the requested search warrant and does not set forth all of my knowledge about this matter. The statements in this affidavit are based on my personal knowledge, information that I have received from other law enforcement personnel, and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to obtain the requested warrant.

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

2

7. Based on my training, experience, and the facts set forth in this affidavit, I believe there is probable cause that violations of United States Code Title 18 §113(a)(3) and 1153 Assault with a dangerous weapon committed in Indian Country were committed by PERFINNA KING year of birth 1979 (referred to herein as "KING"), and that evidence of such crimes may be in the possession of Cellular One. KING is an enrolled member of the Navajo Nation. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## PROBABLE CAUSE

8. On or about November 3, 2020, the Farmington Resident Agency of the FBI was notified by the NNDCI of a shooting that occurred on the Navajo Nation Indian Reservation the previous evening. On or about November 2, 2020 at approximately 5:57pm, NPD officers responded to a report of gunshots being fired at a vehicle in vicinity of US Highway 371 and Road 4142, which is within the exterior boundaries of the Navajo Nation Indian Reservation. Responding officers identified the driver of the victim vehicle as an individual with initials C.C. and year of birth 1990 (referred to herein as "VICTIM 1"), an enrolled member of the Navajo Nation Indian Tribe.

9. On or about November 3, 2020, the FBI and NNDCI interviewed VICTIM 1 who stated that he, his girlfriend identified with initials C.J. and year of birth 1993 (referred to herein as "WITNESS 1"), and their son identified with initials O.G. and year of birth 2017, were driving back from taking photos at an outdoor location heading eastbound on Road 4142 when a white Ford Fiesta driving westbound on the same road swerved into VICTIM 1's lane of traffic in front of VICTIM 1's vehicle. VICTIM 1 stopped his vehicle on the road at which point the Ford Fiesta also stopped just after passing VICTIM 1's vehicle. VICTIM 1 got out of his vehicle

3

and noticed the driver of the Ford Fiesta was holding a Bud Light can. The driver of the Ford Fiesta asked VICTIM 1, "why are you following me?" WITNESS 1 heard the driver of the Ford Fiesta slurring their speech. VICTIM 1 asked the driver of the Ford Fiesta if they were just driving around drinking and bugging people, then told the driver of the Ford Fiesta to "get out of here." The driver of the Ford Fiesta laughed at VICTIM 1, at which point VICTIM 1 moved behind the Ford Fiesta and took a photo of the vehicle's license plate which was New Mexico plate PXD449. The driver of the Ford Fiesta then drove the vehicle in reverse towards VICTIM 1 who was able to get out of the way by stepping in front of his own vehicle.

10.  VICTIM 1 got back into his own vehicle and was about to drive away when the Ford Fiesta started moving again and drove past VICTIM 1's vehicle. When the Ford Fiesta was directly next to VICTIM 1's vehicle, VICTIM 1 heard four gunshots which he described as "like a .22, just mild but loud." As the Ford Fiesta was passing VICTIM 1's vehicle and the shots were happening, VICTIM 1 saw what he believed to be the barrel of a firearm being held out of the driver's window. VICTIM 1 saw this while he was looking into the driver side mirror. VICTIM 1 looked in the rearview mirror and noticed that the rear window of his vehicle was shot out. VICTIM 1 and WITNESS 1 called 911 and attempted to direct responding NPD officers to the Ford Fiesta. During the ensuing pursuit, NPD officer were unable to stop the Ford Fiesta. At some point during the pursuit, the Ford Fiesta encountered VICTIM 1's vehicle again in a different location and made another attempt to swerve in front of VICTIM 1's vehicle.

11.  VICTIM 1 stated there was one passenger in the passenger seat of the Ford Fiesta in addition to the driver. VICTIM 1 described the driver of the vehicle as having short hair with a white baseball cap worn backwards, medium build, no glasses, and not straight teeth. VICTIM 1 could not see the head of the passenger, but described the passenger as wearing black

4

sweatpants, a black zip up sweater, and a grey t-shirt. WITNESS 1 described the driver as wearing a white baseball cap worn backwards. WITNESS 1 described the passenger as having a high bun ponytail with glasses.

12. During the interview, investigators observed what appeared to be a small bullet hole in the rear window on the driver side of VICTIM 1's vehicle. Investigators also observed that the rear window of VICTIM 1's vehicle was shattered.

13. Immediately following the shooting, WITNESS 1 posted on the San Juan County Crime Watch Facebook page about the incident. A Facebook user with initials L.J. responded to the post stating that she recognized the Ford Fiesta as belonging to her neighbor KING, who "stays at house #47 in Ojo Amarillo." Per a conversation between the NNDCI Criminal Investigator and the Navajo Nation Housing Authority, the official address for "house #47 in Ojo Amarillo" is Navajo Housing Authority ("NHA") Ojo Mutual House #47, Fruitland, NM.

14. On or about November 4, 2020, your affiant and an NNDCI Criminal Investigator conducted a photographic line up with VICTIM 1 which included a photo of KING. VICTIM 1 did not identify KING as the driver of the Ford Fiesta.

15. On or about November 4, 2020, investigators contacted the registered owner of the Ford Fiesta, an individual with initials V.J. and year of birth 1939 (referred to herein as "WITNESS 2"). WITNESS 2 confirmed that KING lived at NHA Ojo Mutual House #47, Fruitland, NM and drove the Ford Fiesta. On the date of the shooting, KING left NHA Ojo Mutual House #47 driving the Ford Fiesta at approximately 1:00pm and returned to NHA Ojo Mutual House #47 driving the Ford Fiesta at approximately 10:00pm. KING was the only one that drove the Ford Fiesta. KING has her own bedroom at NHA Ojo Mutual House #47.

16. On or about November 4, 2020, the Farmington Police Department ("FPD") conducted a vehicle stop of a white Ford Fiesta for driving without a license plate. The occupants of the vehicle were identified as KING and an individual with initials L.C. and year of birth 1979 (referred to herein as WITNESS 3"). That same day, KING contacted WITNESS 2 and told WITNESS 2 to meet KING at the Motor Vehicle Department in Farmington, NM in order to get a new license plate.

17. On or about November 4, 2020, your affiant conducted queries of the National Crime Information Center ("NCIC") and FBI records. FBI records indicated that in November 2013 KING plead guilty to Title 18 U.S.C. §924(c)(1)(A)(i) Using and Carrying of a Weapon in the Commission of a Crime of Violence, that is, Assault Resulting in Serious Bodily Injury Title 18 U.S.C. §1153 and §113(a)(6) as part of United States District Court, District of New Mexico cause number 12-1087 WJ. In February 2014, KING was sentenced to six years imprisonment and three years supervised release.

18. On or about November 7, 2020, a federal search warrant issued in the District of New Mexico was executed on the residence located at NHA Ojo Mutual House #47. During the search, WITNESS 2 identified the location of KING's room. You affiant located a black CO2 pistol and one .30-06 round of ammunition in KING's room.

19. On or about November 7, 2020 pursuant to a federal search warrant issued in the District of New Mexico, NNDCI investigators seized the Ford Fiesta bearing vehicle identification number ("VIN") 3FADP4BJ3KM163788 along with three wireless telephones from KING at her worksite in Lukachukai, AZ. WITNESS 3 was also present at the worksite and was removed from the vehicle at the time of the seizure. There was no license plate on the rear license plate mounting area of the vehicle at the time of the seizure. NNDCI investigators

observed the new license plate identified as New Mexico tag RAM185 obtained at KING's request by WTINESS 2 located on the vehicle's front dash. The three wireless telephones seized from KING and WITNESS 3 were a black Logic wireless telephone Model X50, serial number X502006058335, IMEI1: 352526110698261, IMEI2: 352526110698279; a black Samsung wireless telephone Model SM-J337V, IMEI: 357093100835051; and a black Shenzhen Tinno wireless telephone Model U304AA, IMEI: 861582045466625.

20. On or about November 7, 2020, a federal search warrant issued in the District of New Mexico was executed on the Ford Fiesta bearing VIN 3FADP4BJ3KM163788, registered to WITNESS 2. During the search, eight CO2 canisters, two plastic tubes containing BB pellets, and an owner's manual for an HK USP CO2 air pistol were located, in addition to drug paraphernalia and 7.033 grams of Methamphetamine Hydrochloride. Investigators also located an Apple iPhone SE cell phone bearing serial number 358633073366391 inside the vehicle.

21. On or about November 12, 2020, WITNESS 3, KING's wife, was interviewed and stated KING had been at work in Lukachukai, AZ on November 2, 2020. WTINESS 3 stated KING returned from work and the two of them drove to Durango, CO in KING's Ford Fiesta to visit friends. The Ford Fiesta was the only vehicle WITNESS 3 and KING used, which KING had driven to work on November 2, 2020 before returning home and picking up WITNESS 3. WITNESS 3 stated that at no point on November 2, 2020 did she and KING have any interaction with anyone on a roadway. WITNESS 3 did not know what happened to the original license plate on the Ford Fiesta, only that KING's grandmother was the one who told them the plate was missing.

22. On or about November 12, 2020, KING was interviewed and stated she was at work in Lukachukai, AZ on November 2, 2020 from 7:00am to 3:00pm and that she had driven

7

the Ford Fiesta subsequently seized by law enforcement to get there. KING left work around 3:00pm to return home and pick up WITNESS 3 before driving to Durango, CO to visit friends. KING and WITNESS 3 returned home to NHA Ojo Mutual House #47 at some point after leaving Durango. KING stated she and WITNESS 3 were the only two that drove the Ford Fiesta and that they were the only two in the Ford Fiesta on November 2, 2020. KING stated she did not own a gun or anything that looked like a gun. KING stated the CO2 canisters and BB pellets found in her vehicle were for a BB gun owned by her brother. KING also stated that her grandmother was the one who told KING about the Ford Fiesta missing the license plate.

23. On or about November 6, 2020, NNDCI criminal investigators interviewed KING's work supervisor who stated KING had not worked all week and did not work on November 2, 2020. KING's supervisor showed his cell phone to the investigators which contained text messages between the supervisor and KING. KING was stored in the supervisor's contacts as "Perphenna" with telephone number 505-686-3778, SUBJECT PHONE. The most recent text message from KING to the supervisor was sent on November 2, 2020 at 4:46pm which read "So can I go to work sometime this week?" The supervisor also showed the investigators KINGs most recent pay slip dated October 25, 2020 which listed KING's most recent day of work as Sunday October 25, 2020.

24. Both KING and VICTIM 1 are enrolled members of the Navajo Nation Indian tribe. The location where the shooting took place on November 2, 2020 was within the exterior boundaries of the Navajo Nation Indian reservation.

25. Determining the location of SUBJECT PHONE surrounding the time communication occurred between KING and her supervisor, including throughout the day on November 2, 2020, is relevant and material to determining KING's whereabouts in relation to

8

the interaction reported by VICTIM 1 and KING's reported alibi of being in Lukachukai, AZ and Durango, CO. Accordingly, this search warrant seeks historical cell site data from the provider of SUBJECT PHONE on November 2, 2020, from 6:00 am MDT until 11:30 pm MDT. This time frame includes the time KING claimed to have been at work in Lukachukai, the time VICTIM 1 reported being shot at by the driver of the Ford Fiesta, the time KING and WITNESS 3 stated they drove to Durango and back, and the time WITNESS 2 stated KING returned to her residence.

26.     In my training and experience, I have learned that Cellular One is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

27.     Based on my training and experience, I know that wireless providers such as Cellular One can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as Cellular One typically collect and retain cell-site data pertaining to cellular

9

phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

28. Based on my training and experience, I know that some wireless providers can also collect per-call measurement data, which is also sometimes referred to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

29. Based on my training and experience, I know that wireless providers such as Cellular One typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Cellular One typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

**AUTHORIZATION REQUEST**

30. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

31.     I further request that the Court direct Cellular One to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Cellular One, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
Travis Kosir
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on August 2, 2021:

_____
B. Paul Briones
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number **505-686-3778**, ("the Account"), that are stored at premises controlled by CELLULAR ONE OF NORTH EAST ARIZONA ("the Provider"), a wireless telephone service provider headquartered at 1500 South White Mountain Rd. Suite 103, Show Low, Arizona 85901.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period on November 2, 2020, from 6:00 am MDT until 11:30 pm MDT:

   a. The following information about the customers or subscribers of the Account:

      i. Names (including subscriber names, user names, and screen names);

      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

      iii. Local and long distance telephone connection records;

      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

      v. Length of service (including start date) and types of service utilized;

      vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

2

  viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

  i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

  ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, and if available, as well as per-call measurement data (also known as the "real-time tool" or "RTT" data)].

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of United States Code Title 18 §113(a)(3) and 1153 Assault with a dangerous weapon committed in Indian Country involving PERFINNA KING during the period on November 2, 2020, from 6:00 am MDT until 11:30 pm MDT.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by CELLULAR ONE OF NORTH EAST ARIZONA, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of CELLULAR ONE OF NORTH EAST ARIZONA. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of CELLULAR ONE OF NORTH EAST ARIZONA, and they were made by CELLULAR ONE OF NORTH EAST ARIZONA as a regular practice; and

    b.    such records were generated by CELLULAR ONE OF NORTH EAST ARIZONA electronic process or system that produces an accurate result, to wit:

        1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of CELLULAR ONE OF NORTH EAST ARIZONA in a manner to ensure that they are true duplicates of the original records; and

2.  the process or system is regularly verified by CELLULAR ONE OF NORTH EAST ARIZONA, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                Signature